| ESTADO LIBRE ASOCIADO DE PUERTO RICO<br>TRIBUNAL DE APELACIONES<br>PANEL III | | |
|---|---|---|
| ANANDA LÓPEZ DE AZÚA<br><br>Recurrente<br><br>V.<br><br>DEPARTAMENTO DE EDUCACIÓN<br><br>Recurrido | TA2025RA00127 | Revisión Judicial procedente del Departamento de Educación<br><br>Caso Núm.:<br>QEE2425041100928<br><br>Sobre:<br>Educación Especial |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de marzo de 2026.

Comparece la señora Ananda López de Azúa (señora López de Azúa o recurrente), en representación de su hijo menor de edad, y solicita la revisión de una *Resolución Final* emitida el 2 de julio de 2025 por el Foro Administrativo de Educación Especial del Departamento de Educación de Puerto Rico (DEPR o recurrida).[1] En dicho dictamen, el foro administrativo declaró No Ha Lugar la *Querella* presentada por la señora López de Azúa y determinó que su hijo no era elegible para el Programa de Educación Especial (PEE).

Con la comparecencia de ambas partes y la transcripción de la prueba oral (TPO), este Tribunal procede a resolver y adelanta la revocación de la determinación recurrida.

**I.**

Este caso se originó el 1 de noviembre de 2024, cuando la señora López de Azúa, en representación de su hijo, presentó una *Querella* contra el DEPR, relacionada con la determinación de elegibilidad al PEE, traslado de expediente, reembolso del año escolar 2023-2024 y redacción del Programa Educativo Individualizado

---

[1] Entrada 2 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Archivada y Notificada el 2 de julio de 2025.

(PEI).[2] Alegó que el menor estaba registrado en el PEE del estado de Georgia, donde recibió servicios educativos y relacionados en atención a su diagnóstico de Trastorno por Déficit de Atención e Hiperactividad (ADHD, por sus siglas en inglés) y de problemas específicos del aprendizaje y lenguaje. Arguyó que su desempeño académico estaba por debajo del promedio para su edad.

La recurrente expresó que, tras mudarse a Puerto Rico, el 8 de febrero de 2024, completó el pre-registro al PEE del DEPR mediante la plataforma Mi Portal Especial (MiPE) y recibió confirmación de que sería contactada para la determinación de elegibilidad. Sin embargo, alegó que el Distrito de Morovis no tramitó la solicitud y que, en el Comité de Programación y Ubicación (COMPU) del 7 de agosto de 2024, el DEPR evaluó al menor como nuevo ingreso y no gestionó el traslado del expediente de Georgia. A su entender, ello resultó en un expediente incompleto y en la no elegibilidad al PEE.

Señaló que el DEPR incumplió con la *Individuals with Disabilities Education Act* (*IDEA*), 20 USC sec. 1400 et seq., según enmendada por la *Individuals with Disabilities Education Improvement Act* de 2004 (*IDEIA*) y la *Sentencia por Estipulación* en el caso *Rosa Lydia Vélez v. DE*, KPE 80-1738 (805), al no observar el proceso de registro, los términos para determinar elegibilidad ni proveer los servicios educativos y relacionados conforme las fortalezas y necesidades del menor. Argumentó que la mera sospecha de una condición activaba el proceso de registro y evaluación y que las buenas calificaciones no excluían la elegibilidad por sí solas. Asimismo, planteó que, al estar registrado en el PEE en Georgia, procedía trasladar el expediente de su hijo y proveerle una educación pública, gratuita y apropiada.

---

[2] Anejo II en SUMAC, págs. 21-24.

En cuanto al año escolar 2024-2025, adujo que el DEPR no convocó oportunamente el COMPU para evaluar alternativas de ubicación, situación que la obligó a contratar los servicios educativos y relacionados de una escuela privada. En virtud de lo anterior, solicitó el traslado del expediente del menor; mantener vigente el PEE aprobado en Georgia mientras se actualizaba el correspondiente al año 2024-2025; convocar el COMPU; conceder servicios compensatorios por sesiones adeudadas y reembolsar el costo de los servicios educativos provistos durante el año escolar 2023-2024.

El 10 de noviembre de 2024, el DEPR contestó la *Querella*.[3] Entre otros, señaló que carecía de información para aceptar o negar el registro del estudiante en el estado de Georgia y sostuvo que los progenitores podían solicitar el expediente en el estado de Georgia y entregarlo a los funcionarios del DEPR. A su vez, resaltó que no procedía el reembolso reclamado, ya que se determinó que el menor no era elegible para el PEE. Añadió que las alegaciones relacionadas al año académico 2024-2025 dependían de que se sostuviera la determinación de elegibilidad. Finalmente, apuntó que la recurrente no solicitó como remedio que se evaluara la determinación de no elegibilidad, reiterando que no se afectó adversamente el aprovechamiento académico del niño.

Así las cosas, el 18 de enero de 2025, se ordenó la celebración del COMPU para el 12 de febrero de 2025 y la notificación de los acuerdos.[4] El 14 de febrero de 2025, la señora López de Azúa informó que el DEPR determinó que el menor no era elegible para el PEE, por lo que reiteró los remedios solicitados en la *Querella*.[5]

Tras varios trámites procesales, el foro administrativo celebró unas vistas sobre determinación de elegibilidad los días 12 y 19 de

---

[3] Anejo II en SUMAC, págs. 25-27.
[4] Anejo II en SUMAC, págs. 52.
[5] Anejo II en SUMAC, págs. 55-56.

mayo de 2025 y 2 de junio de 2025, en las que declararon las señoras López de Azúa e Ingrid Joan Ocasio González y el señor Lino Elías Ocaña. A continuación, se sintetizan los testimonios.

**Señora López de Azúa**

La testigo declaró que en la evaluación psicoeducacional realizada a su hijo los días 23 de junio y 7 de julio de 2021 en el estado de Georgia se confirmó el diagnóstico de ADHD y se describieron conductas de impulsividad y exceso de actividad que podían incidir en su progreso académico.[6] Indicó que en dicha evaluación se recomendó que el menor fuera considerado elegible para los servicios de educación especial bajo la categoría de *Other Health Impaired* (otros problemas de salud).[7] Asimismo, identificó el *Eligibility Report* del 1 de agosto de 2021, en el que se determinó que su hijo era elegible para los servicios de educación especial bajo la categoría primaria de otros problemas de salud.[8] Expresó que solicitó la certificación de los documentos escolares en Georgia para facilitar su remisión al DEPR, a fin de que fueran considerados en las reuniones de COMPU y en determinaciones de elegibilidad.[9]

Testificó que, tras mudarse a Puerto Rico, su hijo fue evaluado por la doctora Ruth López Vélez, quien el 22 de agosto de 2023, emitió recomendaciones de acomodo razonable debido a su ansiedad, ajustes que recibía.[10] Declaró que la profesora de ciencias expresó que las evaluaciones académicas y sus observaciones sugerían la presencia de algún impedimento físico, mental o emocional, que el estudiante presentaba dificultad de aprovechamiento en alguna o varias áreas académicas y en el análisis.[11] Indicó que dicha profesora

---

[6] TPO del 12 de mayo de 2025, pág. 27, líneas,17-25; pág. 28, líneas 1-25; pág. 35, líneas 18-25; pág. 36, líneas 1-4; pág. 41, líneas 5-9.
[7] *Íd.*
[8] *Íd.*, pág. 37, líneas 2-24; pág. 41, líneas 1-12.
[9] *Íd.*, pág. 32, líneas 2-12.
[10] *Íd.*, pág. 58, líneas 13-24; pág. 59, líneas 1-6.
[11] *Íd.*, pág. 98, líneas 15-25; pág. 99, líneas 1-6.

señaló que el menor recibía acomodos y que en ocasiones demostraba destrezas de vocabulario, aunque no de forma consistente.[12]

La señora López de Azúa manifestó que aun cuando se encontraba en Georgia, notificó al DEPR sobre la mudanza a Puerto Rico y visitó distintas oficinas de educación especial en la Isla.[13] Expresó que había completado el registro de su hijo y que, al no recibir respuesta de funcionario alguno, continuó realizando gestiones adicionales.[14]

Señaló que el 7 de agosto de 2024, se celebró la reunión de elegibilidad y que, en aproximadamente cuatro (4) minutos, el DEPR determinó que su hijo no era elegible para el PEE.[15] Indicó que se tomó en consideración que el menor obtuvo calificaciones de 86% en arte, 83% en ciencias, 78% en inglés y 91% en español, señalándose que mejoró en español y que podía desarrollar conocimientos y destrezas acordes con su grado y edad sin recibir servicios de educación especial.[16] Expresó que la razón principal para la determinación fue que el menor tenía buenas notas y que no se afectó académicamente, evaluándose únicamente el criterio de un profesor.[17] Atestó que, aunque solicitó una evaluación adicional debido al diagnóstico de trastorno del lenguaje y otras necesidades identificadas, el personal del DEPR no mostró disposición para realizarla, y que tuvo la impresión de que el proceso fue subjetivo, basado en notas académicas y conducido de manera arbitraria sin que su postura fuera escuchada.[18]

Indicó que en la evaluación psicométrica realizada por la doctora Johanina McCormick se describió que las discrepancias observadas en las pruebas coincidían con la presencia de

---

[12] *Íd.*, pág. 121, líneas 16-25; pág. 122, líneas 1-2.
[13] *Íd.*, pág. 115, líneas 5-25.
[14] *Íd.*, pág. 113, líneas 19-25.
[15] *Íd.*, pág. 126, líneas 8-25; pág. 128, líneas 1-5.
[16] *Íd.*, pág. 150, líneas 14-25; pág. 151, líneas 1-7.
[17] *Íd.*, pág. 127, líneas 1-2.
[18] *Íd.*, líneas 2-12; pág. 128, líneas 16-19.

discrepancia en el aprendizaje, particularmente en el lenguaje, obteniendo puntuaciones por debajo de lo esperado en comprensión verbal, vocabulario, similitudes y razonamiento.[19] Señaló que la evaluación reflejó un perfil similar a ADHD y ansiedad, y que la doctora diagnosticó desorden del lenguaje, impedimento específico en el aprendizaje en la expresión escrita (incluyendo gramática y ortografía), trastorno de ansiedad y déficit de atención.[20] Puntualizó que aunque el menor obtuvo una puntuación promedio en la prueba de inteligencia, la doctora expresó que probablemente ello constituía una subestimación de su funcionamiento real debido al impacto del trastorno del lenguaje en su desempeño, destacando fortalezas en el área visual-espacial y en la fluidez asociativa, razón por la cual se podía beneficiar del aprendizaje contextual.[21]

En el área psicoeducativa, la testigo declaró que la impresión diagnóstica de la señora Idelis Matos Cruz del 10 de diciembre de 2024 fue que el menor presentaba trastorno específico del aprendizaje con dificultad en la lectura (velocidad, fluidez y comprensión) y en la expresión escrita (corrección ortográfica, gramatical y puntuación).[22] Indicó que, a base del juicio profesional de la especialista, ello afectaba adversamente su aprendizaje y aprovechamiento escolar al interferir con su capacidad de asimilación de conceptos y adquisición de destrezas académicas.[23]

Asimismo, atestó que en la evaluación del habla y lenguaje realizada el 11 de diciembre de 2024, la licenciada María Rodríguez diagnosticó un rezago leve en el lenguaje, caracterizado por dificultades de comprensión, análisis y lectoescritura que afectaban adversamente el aprendizaje y aprovechamiento escolar del menor.[24]

---

[19] *Íd.*, pág. 133, líneas 22-25; pág. 134, líneas 1-5.
[20] *Íd.*, pág. 134, líneas 4-15.
[21] *Íd.*, pág. 136, líneas 1-16.
[22] *Íd.*, pág. 139, líneas 15-25; pág. 140, líneas 1-5.
[23] *Íd.*, pág. 140, líneas 6-14.
[24] *Íd.*, pág. 141, líneas 11-25; pág. 142, líneas 1-4.

Planteó que la especialista recomendó terapia individual una vez por semana con duración de cuarenta y cinco (45) minutos durante tres (3) años.[25] A esto añadió una tercera evaluación psicométrica del 17 de diciembre de 2024, en la que la especialista Lucy García de Quevedo determinó que el menor demostró un funcionamiento intelectual general promedio comparado con los niños de su edad, pero con una sintomatología significativa compatible con ADHD presentación combinada.[26] Indicó que, según la especialista, ello afectaba adversamente el aprendizaje y el aprovechamiento escolar del menor y que sus dificultades en el área conductual por el pobre autocontrol y concentración interferían en su capacidad de asimilación de conceptos.[27] Expresó que se recomendó servicios de intervención grupal una vez por semana por un año.[28]

**Señora Ocasio González**

La testigo señaló que durante el año escolar 2023-2024 laboraba como profesora de ciencias en los niveles de sexto y séptimo grado.[29] Manifestó que la lengua materna del menor era el inglés, por lo que se encontraba matriculado en una institución privada completamente en ese idioma.[30] Sostuvo que, al completar la evaluación anual del estudiante, consignó que este presentaba dificultad en el análisis de preguntas.[31]

Expuso que en el nivel intermedio la clase de ciencias exigía un pensamiento crítico y el menor, aun siendo el inglés su primer idioma, no lograba ejecutar dicho proceso si no se le guiaba.[32] Añadió que sus demás estudiantes sí demostraban la capacidad de desarrollar pensamiento crítico en la clase.[33] Indicó que, a su juicio, el estudiante

---

[25] *Íd.*, pág. 142, líneas 6-17.
[26] *Íd.*, pág. 143, líneas 1-6.
[27] *Íd.*, pág. 146, líneas 3-24.
[28] *Íd.*, pág. 147, líneas 2-8.
[29] TPO del 19 de mayo de 2025, pág. 11, línea 25; pág. 12, líneas 1-4.
[30] *Íd.*, pág. 13, líneas 1-8.
[31] *Íd.*, pág. 14, líneas 1-8.
[32] *Íd.*, líneas 12-19.
[33] *Íd.*, pág. 15, líneas 17-22.

no alcanzaba a desarrollar conocimientos al nivel correspondiente al grado sin recibir asistencia de educación especial, puesto que requería asistencia extra.[34] Asimismo, explicó que durante el año escolar 2024-2025, el menor obtuvo una calificación de B en su curso, aunque dicha nota fue alcanzada con la implementación de acomodos razonables.[35] Finalmente, expresó que la institución era de alto rendimiento académico y que, sin dichos acomodos, el estudiante no podría sobrellevar el progreso académico.[36]

**Señor Elías Ocaña**

El testigo declaró que era facilitador de educación especial nivel IV en el Centro de Servicios de Morovis.[37] Indicó que en el COMPU para el análisis de evaluación y determinación de elegibilidad del menor al PEE, orientó a la madre sobre los requisitos de elegibilidad y se le explicó que aun si el estudiante presentara una discapacidad, si esta no afectaba adversamente su aprovechamiento escolar, podría no resultar elegible bajo los criterios de la *IDEA, supra.*[38] Señaló que en la primera determinación de elegibilidad se concluyó que el menor no era elegible, basándose en sus calificaciones y en una evaluación presentada por la madre.[39] No obstante, indicó que en diciembre de 2024 se solicitaron evaluaciones adicionales para contar con información más actualizada y fidedigna.[40]

Declaró que se le informó a la señora López de Azúa que, de no ser su hijo elegible al PEE, y de requerir educación especializada, el menor podía beneficiarse de acomodos razonables mediante un plan de rehabilitación de la sección 504, para apoyar su funcionamiento sin discapacidad.[41] Expresó que en la reunión surgió que las

---

[34] *Íd.*, pág. 17, líneas 18-24; pág. 18, líneas 1-8.
[35] *Íd.*, pág. 32, líneas 12-25; pág. 35, líneas 20-24.
[36] *Íd.*, pág. 35, líneas 1-13.
[37] TPO del 2 de junio de 2025, pág. 6, líneas 11-12.
[38] *Íd.*, pág. 12, líneas 14-20.
[39] *Íd.*, pág. 13, líneas 1-8; pág. 14, líneas 2-3; pág. 48, líneas 4-13.
[40] *Íd.*
[41] *Íd.*, pág. 18, líneas 2-12.

calificaciones del menor eran promedio y que su funcionamiento académico era acorde con el de un estudiante de su edad.[42]

Manifestó que en la segunda determinación de elegibilidad, luego de solicitarse la evaluación psicométrica, del habla y psicoeducativa, no cambió la no elegibilidad, ya que el menor mantenía buena ejecución.[43] Explicó que, entre los criterios para determinar elegibilidad, se consideraban las calificaciones, las evaluaciones clínicas, los informes de los profesores y la información provista por los progenitores, con el fin de determinar si afectaban adversamente el aprovechamiento escolar.[44]

Puntualizó que en uno de los informes de los docentes, se señaló que la estrategia utilizada para atender las dificultades del estudiante consistía en acomodos razonables bajo la Sección 504.[45] Asimismo, testificó que en un informe fechado el 18 de junio de 2024, al preguntarse si el aprendizaje y aprovechamiento del menor se encontraban adversamente afectados por razón del impedimento identificado, una maestra contestó que no, lo cual fue considerado para la determinación de no elegibilidad del 12 de febrero de 2025.[46] Por otro lado, reconoció que la profesora de ciencias indicó en su informe del 14 de junio de 2024 que el menor presentaba dificultades de aprovechamiento en alguna área académica específica.[47]

Aceptó que en el COMPU celebrado en febrero de 2025 no se consideraron las recomendaciones de la doctora Johanina McCormick emitidas el 3 de febrero de 2023.[48] Además, admitió que la especialista Lucy García de Quevedo indicó en su informe de diciembre de 2024 que el menor presentaba diagnóstico de ADHD tipo combinado que afectaba adversamente su aprendizaje y

---

[42] *Íd.*, pág. 19, líneas 6-12.
[43] *Íd.*, pág. 23, líneas 9-24; pág. 24, líneas 8-24.
[44] *Íd.*, pág. 30, líneas 20-25; pág. 31, líneas 1-8.
[45] *Íd.*, pág. 34, líneas 6-14.
[46] *Íd.*, pág. 41, líneas 1-5; pág. 45, líneas 15-17; pág. 46, líneas 1-8.
[47] *Íd.*, pág. 47, líneas 12-23.
[48] *Íd.*, pág. 83, líneas 13-20.

aprovechamiento escolar.[49] Sin embargo, aceptó que la determinación de no elegibilidad se fundamentó en las calificaciones promedio del menor.[50] No obstante, reconoció que en el *Manual de Procedimientos de Educación Especial* establece que para determinar elegibilidad no necesariamente se debía evidenciar discrepancia significativa entre la habilidad intelectual y el aprovechamiento para concluir que existía un problema específico de aprendizaje.[51]

Precisó que aunque el menor fue elegible para los servicios de educación especial en el estado de Georgia, en Puerto Rico no se reconoció dicha elegibilidad, ya que la *IDEA, supra*, permitía que cada estado o territorio estableciera su protocolo para la determinación de elegibilidad.[52] Señaló que, al no formar parte del PEE en Puerto Rico, no se consideró un traslado automático.[53] Concluyó que, aunque el menor presentaba diagnósticos reflejados en los informes de evaluación, no era elegible porque no limitaban negativamente su progreso académico.[54]

Posteriormente, el 2 de julio de 2025, el foro administrativo emitió su *Resolución Final*, mediante la cual declaró No Ha Lugar la *Querella* presentada por la recurrente.[55] En consecuencia, determinó que el menor no era elegible para recibir los servicios del PEE del DEPR.

El foro administrativo concluyó que el caso ante su consideración no podía considerarse un traslado, ya que de la propia prueba presentada por la señora López de Azúa surgía de que transcurrieron aproximadamente seis (6) meses del año escolar 2023-2024 y del cambio de residencia, para iniciar el proceso de registro. Sostuvo que, conforme a la *IDEA, supra*, cuando un estudiante se

---

[49] *Íd.*, pág. 85, líneas 21-25; pág. 86, líneas 1-11.
[50] *Íd.*, pág. 92, líneas 19-23.
[51] *Íd.*, pág. 93, líneas 9-24; pág. 94, líneas 14-16.
[52] *Íd.*, pág. 97, líneas 2-16; pág. 98, líneas 23-25; pág. 99, línea 1.
[53] *Íd.*
[54] *Íd.*, pág. 100, líneas 9-25; pág. 101, líneas 1-2.
[55] Entrada 2 en SUMAC. Archivada y Notificada el 2 de julio de 2025.

mudaba de un estado a otro, el PEI del estado de procedencia no obligaba automáticamente al estado receptor a adoptarlo. Planteó que el hecho de que el menor contaba con un PEI durante el año escolar 2022-2023 en Georgia no obligaba a Puerto Rico a aceptar el PEI ni la determinación de elegibilidad al PEE.

Añadió que el DEPR realizó la evaluación correspondiente para determinar la elegibilidad del menor al PEE en Puerto Rico, por lo que entendió innecesario analizar la normativa relativa a traslados.

En cuanto a los criterios de elegibilidad para recibir los servicios de educación especial en Puerto Rico, manifestó que debían cumplirse los siguientes tres requisitos: (a) que el menor tuviera una condición, trastorno o rezago que causara una discapacidad, según definido por la legislación federal y estatal aplicable; (b) que la discapacidad limitara negativamente su educación y progreso académico (escolar) o su desarrollo y participación en actividades propias de su edad (preescolar), y (c) por tal razón, necesitara una educación especialmente diseñada.

Respecto a la prueba testifical, el foro administrativo consignó que la profesora del menor declaró que este no podía desarrollar conocimientos a nivel de grado sin recibir servicios de educación especial. Determinó que dicha conclusión no le resultaba persuasiva, dado que la testigo carecía de preparación en el área de educación especial. Destacó que, pese a los altos estándares académicos de la institución, el menor obtuvo una calificación de B en la clase de la testigo con acomodos razonables, sin recibir educación especial. Señaló, además, que la profesora manifestó que, sin dichos acomodos, el menor no podía sobrellevar la carga académica, pero resaltó que los padres seleccionaron voluntariamente dicho colegio.

Por otra parte, reconoció que el DEPR incumplió con el término de treinta (30) días para evaluar al menor tras su registro en el PEE, en contravención a los plazos establecidos en la *Sentencia por*

*Estipulación* en el caso *Rosa Lydia Vélez v. DE, supra.* Sin embargo, explicó que celebraron múltiples reuniones del COMPU con el propósito de recopilar información conforme a los requisitos de ley. Indicó que el 4 de diciembre de 2024, se llevó a cabo un segundo COMPU, en el que se determinó que el estudiante no era elegible. A pesar de ello, expuso que el DEPR refirió al menor para evaluaciones adicionales, cuyos resultados fueron discutidos en el COMPU celebrado el 12 de febrero de 2025.

Según el foro administrativo, la evaluación psicoeducativa del 10 de diciembre de 2024 arrojó como impresión diagnóstica un trastorno específico del aprendizaje con dificultades en la velocidad, fluidez y comprensión de lectura y en la ortografía, gramática y puntuación en la expresión escrita. Relató que en la evaluación de habla y lenguaje del 11 de diciembre de 2024, se reflejó que el menor presentaba un rezago leve del lenguaje, caracterizado por dificultades en comprensión, análisis y destreza de escritura, las cuales afectaban adversamente su aprendizaje y aprovechamiento escolar, con una prognosis condicionada. Por último, indicó que en la evaluación psicométrica del 17 de diciembre de 2024, se determinó que el menor tenía un funcionamiento intelectual general promedio. Expresó que en la entrevista clínica se obtuvieron resultados significativos relacionados con la sintomatología del ADHD tipo combinado, así como dificultades conductuales que aparentaban afectar su desempeño académico. Concluyó que las dificultades conductuales del menor estaban asociadas al ADHD, sin obtener resultados significativos en otros trastornos.

Indicó que en la reunión en el COMPU del 12 de febrero de 2025, se concluyó que el menor no cumplió con los criterios para recibir servicios de educación especial, basado en el análisis de evaluaciones cognitivas, el informe de la maestra y el informe académico. Sostuvo que obtuvo una calificación de 86% en arte, 83%

en ciencias, 78% en inglés, 83% en álgebra, 86% en estudios sociales, 91% en español, y en el informe sobre el funcionamiento escolar del 18 de junio de 2024, la maestra regular señaló que el menor mejoró en la clase de español, que le encantaba aprender y salir bien en las evaluaciones y trabajos de la clase. También reveló que el estudiante podía desarrollar conocimientos a nivel de su grado académico sin recibir servicios educativos especiales.

Cónsono con lo anterior, el foro administrativo confirmó que el menor no cumplió con los criterios de elegibilidad para recibir los servicios de educación especial en Puerto Rico. Indicó que, a pesar de que las evaluaciones revelaron que tenía una condición, trastorno o rezago que causan una discapacidad, según la legislación federal y estatal aplicable, ello no limitaba negativamente su educación, progreso académico, desarrollo y participación en actividades propias de su edad. En consecuencia, concluyó que no necesitaba una educación especialmente diseñada, y entendió que los acomodos razonables provistos eran efectivos para su funcionamiento.

En desacuerdo, la señora López de Azúa presentó este recurso de revisión judicial, en el que planteó que el foro administrativo incurrió en los siguientes errores:

**PRIMER SEÑALAMIENTO:** ERRÓ EL FORO ADMINISTRATIVO AL TOMAR UNA DECISIÓN QUE NO SE BASA EN EL EXPEDIENTE ADMINISTRATIVO DEL CASO EN VIOLACIÓN AL DEBIDO PROCESO DE LEY.

**SEGUNDO SEÑALAMIENTO:** ERRÓ EL FORO ADMINISTRATIVO AL EXCLUIR [AL MENOR] DEL PROGRAMA DE [EDUCACIÓN] ESPECIAL DEL DEPARTAMENTO DE [EDUCACIÓN], POR SER ESTA [DETERMINACIÓN] CONTRARIA A LAS RECOMENDACIONES DE LOS ESPECIALISTAS EN LAS [ÁREAS] PSICOLÓGICA, PSICOEDUCATIVA Y HABLA-LENGUAJE.

**TERCER SEÑALAMIENTO:** ERRÓ EL FORO ADMINISTRATIVO AL ADMITIR EL TESTIMONIO DE FUNCIONARIOS DEL DEPARTAMENTO DE [EDUCACIÓN] NO ANUNCIADOS CONFORME LA LEY IDEA.

**CUARTO SEÑALAMIENTO:** ERRÓ EL FORO ADMINISTRATIVO AL DETERMINAR QUE [EL MENOR] NO ES ELEGIBLE AL PROGRAMA DE EDUCACIÓN ESPECIAL AL CONCLUIR QUE, A BASE DEL MEMORANDO DE OSEP, EL

DEPARTAMENTO DE EDUCACIÓN DE PUERTO RICO NO VIENE OBLIGADO A RECIBIRLO COMO ESTUDIANTE REGISTRADO EN EL PROGRAMA DE EDUCACIÓN ESPECIAL DE GEORGIA, EE. UU., EN VIOLACIÓN A LAS DISPOSICIONES DE LA LEY [IDEA], LA LEY 51-1996, SEGÚN ENMENDADA Y LA SENTENCIA POR [ESTIPULACIÓN] DE ROSA LYDIA VÉLEZ V. DE, KPE80-1738 (506).

En esencia, la parte recurrente argumentó que el foro administrativo no consideró la totalidad de la prueba presentada. Alegó que los resultados de las evaluaciones realizadas al menor arrojaban diagnósticos reconocidos por la *IDEA, supra,* y que incidían en su proceso de aprendizaje, por lo que requería servicios educativos especializados. Añadió que la profesora de ciencias del menor declaró que el estudiante se beneficiaría del PEE, debido a sus dificultades en el análisis de preguntas, por lo que necesitaba una guía para lograr sus metas.

Asimismo, apuntó que resultaba preocupante que el foro administrativo se enfocara únicamente en las calificaciones obtenidas por el menor, ignorando los hallazgos de las evaluaciones profesionales en las cuales se identificaron trastornos e impedimentos que afectaban adversamente su proceso de enseñanza y aprendizaje. Sostuvo que el foro administrativo pasó por alto el criterio profesional de los especialistas que evaluaron al menor. Señaló que la determinación de elegibilidad debía fundamentarse en las observaciones y evaluaciones de los especialistas, profesores y padres. En virtud de ello, razonó que la determinación recurrida era contraria a derecho, por vulnerar el debido proceso de ley y el derecho del menor a una educación pública, gratuita y apropiada.

De igual modo, cuestionó la postura respecto al traslado. Argumentó que, si bien los estados podían adoptar criterios y reglamentos para administrar el PEE, estos no podían ser más restrictivos ni contrarios a lo dispuesto en la *IDEA, supra.*

Por otra parte, planteó una violación al debido proceso de ley durante las vistas administrativas, dado que se presentó el testimonio

del señor Elías Ocaña y del profesor Daniel Rivera Adorno —quien no declaró por considerarse un testimonio acumulativo— sin haber sido anunciados. Indicó que objetó tales testimonios, no obstante, el foro administrativo los permitió bajo el fundamento de que no constituían prueba sorpresiva. Al respecto, citó el Reglamento de IDEA, 34 CFR 300.323, en cuanto al derecho de cualquier parte en una vista o apelación a prohibir la introducción de evidencia que no se divulgó al menos cinco (5) días laborables antes de la vista.

Finalmente, el foro administrativo concluyó que el DEPR no estaba obligado a tratar al menor como un estudiante de traslado, apoyándose en un memorando del *Office of Special Education Programs* (OSEP), dado que transcurrieron seis (6) meses desde el cambio de residencia sin completar el registro. Empero, precisó que la Sección 300.323(f) del Reglamento de IDEA, *supra*, se enmendó con posterioridad al memorando para disponer que cuando un estudiante con discapacidad se trasladaba de estado dentro del mismo año escolar y contaba con un PEI vigente en la jurisdicción de procedencia, la nueva agencia educativa debía proveerle una educación pública, gratuita y apropiada, incluyendo servicios comparables hasta que se adoptara el PEI previo o se desarrolle otro.

Más tarde, el 31 de diciembre de 2025, la recurrente presentó un alegato suplementario, en el que reiteró que el foro administrativo omitió considerar que el menor previamente había estado registrado y cualificado para recibir servicios de educación especial en el estado de Georgia. Adujo que el DEPR se negó a realizar las gestiones para el traslado del expediente y, en última instancia, se negó a registrarlo en el PEE, pese a que las evaluaciones realizadas en el área psicoeducativa, de habla y lenguaje y psicométrica confirmaban la existencia de diagnósticos que, a su juicio, lo cualificaban para recibir los servicios.

Por su parte, el 6 de febrero de 2026, la Oficina del Procurador General, en representación del DEPR, reiteró que si bien el menor tenía una condición, trastorno o rezago que causó una discapacidad, esta no limitaba negativamente su educación, progreso académico, desarrollo y participación en las actividades propias de su edad.

Sostuvo que, aun cuando las evaluaciones identificaron diagnósticos que incidían en su aprendizaje, existía evidencia en contrario: (1) calificaciones sobresalientes; (2) matrícula en una institución privada de altos estándares seleccionada por los padres; (3) mejoría en español y actitud positiva hacia el aprendizaje; (4) calificación de 83% en ciencias sin recibir servicios de educación especial; (5) advertencia a la madre de que las evaluaciones discutidas en el COMPU de agosto de 2024 tenían más de dos (2) años; (6) nuevas evaluaciones con resultados generales promedio y (7) las calificaciones eran parte de los criterios para la determinación de elegibilidad. Indicó que la recurrente no refutó la presunción de legalidad y corrección del dictamen recurrido, ni presentó evidencia de abuso de discreción o actuación ilegal, arbitraria o irrazonable.

Añadió que el foro administrativo no erró al admitir el testimonio del facilitador del DEPR, ya que era pertinente, formó parte del proceso y el DEPR informó que le faltaban unos testigos. Indicó que, si bien el Artículo 9(3)(b)(i)(3)(d) del Reglamento del Procedimiento para la Resolución de Querellas Administrativas de Educación Especial y sobre la Otorgación de Honorarios de Abogados, Reglamento Núm. 9168, 26 de febrero de 2020, permitía excluir la prueba no notificada con cinco (5) días de antelación, el DEPR divulgó que el facilitador sería su testigo y la recurrente se defendió. A su vez, sostuvo que el traslado del menor no ocurrió dentro del mismo año escolar y que la recurrida tardó seis (6) meses en registrarlo.

## II.

### A. Revisión judicial

La revisión judicial faculta a este Tribunal a examinar las decisiones, órdenes y resoluciones finales de un foro administrativo. Art. 4.006(c) de la *Ley de la Judicatura*, Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24y; Sec. 4.2 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9672. Su propósito es asegurar que el foro administrativo actúe dentro del poder delegado y la política legislativa. *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022); D. Fernández Quiñones, <u>*Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*</u>, 3ra ed., Bogotá, Forum, 2013, pág. 669.

Previamente, los foros judiciales otorgaban deferencia a la interpretación administrativa si resultaba razonable y se basaba en su pericia. *Vázquez y otro v. Con. Tit. Los Corales,* 2025 TSPR 56. No obstante, los tribunales deben ejercer un juicio independiente al evaluar la actuación administrativa, sin otorgar deferencia a su interpretación. *Íd.*; *Loper Bright Enterprises v. Raimondo*, 603 US 369 (2024). Pues, los tribunales tienen una perspectiva más amplia para considerar estas controversias, guiados por la preservación de un sistema robusto del derecho y la confianza pública en los procesos administrativos y judiciales.

De otra parte, las conclusiones de derecho y las cuestiones mixtas de hecho y derechos se revisarán en toda su extensión. *Íd.*; *Vázquez y otro v. Con. Tit. Los Corales, supra; Super. Asphalt v. AFI y otro*, 206 DPR 803 (2021); *Rivera v. A&C Development Corp.*, 144 DPR 450 (1997).

### B. Programa de Educación Especial

Los servicios de educación especial en Puerto Rico se rigen por el esquema normativo federal y estatal. En la esfera federal, la *IDEA, supra*, establece como propósito principal asegurar que los niños con

discapacidades tengan una educación pública, gratuita y apropiada mediante la educación especial y los servicios relacionados diseñados para atender sus necesidades particulares y prepararlos para la educación postsecundaria, el empleo y una vida independiente. 20 USC sec. 1400 (d)(1)(A). Ello, de conformidad con el PEI, el cual debe permitir que el menor reciba beneficios educativos acordes con sus necesidades. *Íd.*, sec. 1401 (9); *Endrew F. v. Douglas Cnty. Sch. Dist RE-1*, 580 US 386 (2017); *Bd. of Educ. v. Rowley*, 458 US 176 (1982).

Para que un menor sea elegible a los servicios de educación especial bajo la *IDEA, supra,* deben concurrir dos elementos esenciales: (1) que el estudiante sea un *child with disability*[56] dentro de alguna de las categorías reconocidas, y (2) que, por razón de dicha discapacidad, necesite educación especial y servicios relacionados. *Íd.*, sec. 1401 (3)(A). Las categorías de discapacidad están definidas reglamentariamente, mediante los *Regulations implementing the Individuals with Disabilities Act,* 34 CFR sec. 300.8. entre ellas se encuentran: autismo; sordoceguera; sordera; disturbio emocional; impedimento auditivo; discapacidad intelectual; discapacidades múltiples; impedimento ortopédico; otros impedimentos de salud, categoría bajo la cual se evalúa el ADHD; discapacidad específica del aprendizaje; impedimento del habla o del lenguaje; lesión cerebral traumática, e impedimento visual. *Íd.* La mayoría de las categorías requieren que la condición afecte adversamente el desempeño educativo del menor. Al respecto, el desempeño educativo no se limita exclusivamente a las calificaciones académicas. *Mr. I. v. Me. Sch. Admin. Dist. No. 55*, 480 F.3d 1 (1st Cir. 2007). De igual modo, el hecho de que un menor avance de grado no implica automáticamente que esté recibiendo una educación pública, gratuita y apropiada para

---

[56] The term 'child with a disability' means a child with mental retardation, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (referred to in this title as 'emotional disturbance'), orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities.

sus necesidades. *Endrew F. v. Douglas Cnty. Sch. Dist RE-1, supra*; *Bd. of Educ. v. Rowley, supra.*

En la determinación de elegibilidad, la *IDEA, supra*, incluye limitaciones expresas sobre factores que no pueden servir de fundamento determinante. En particular, el estatuto dispone que un menor no será determinado como niño con discapacidad si el factor determinante para dicha determinación es la falta de instrucción apropiada en lectura, incluyendo los componentes esenciales de la enseñanza de la lectura; la falta de instrucción en matemáticas; o el dominio limitado del idioma inglés. 20 USC sec. 1414(b)(5)(A)–(C). Asimismo, en cuanto a la categoría de problema específico de aprendizaje, la agencia educativa no está obligada a considerar la existencia de una discrepancia severa entre el logro académico y la capacidad intelectual como requisito para determinar dicha discapacidad. *Íd.*, sec. 1414(b)(6)(A).

La *IDEA, supra*, requiere que la evaluación inicial y la determinación de elegibilidad se realicen mediante un proceso integral, no discriminatorio y basado en múltiples fuentes de información. Véase 20 USC sec. 1414 (b)(2)-(3); 34 CFR sec. 300.304 (b)-(c). En específico, no se puede utilizar una sola medida o criterio como base exclusiva para determinar elegibilidad, sino que se debe utilizar una variedad de herramientas y estrategias de evaluación para recopilar información funcional, de desarrollo y académica pertinente. Además, la evaluación debe ser suficientemente comprensiva para identificar todas las necesidades educativas especiales del menor, estén o no comúnmente vinculadas a la categoría de discapacidad. 34 CFR sec. 300.304 (c)(6).

A su vez, la *IDEA, supra*, reconoce salvaguardas procesales para proteger los derechos de los menores y sus progenitores como parte de su debido proceso de ley. El derecho a una vista imparcial está consagrado en 20 USC sec. 1415(f)(1)(A). Además, cualquiera de

las partes puede prohibir la introducción de evidencia que no haya sido divulgada al menos cinco (5) días laborables antes de la vista, *Íd.*, sec 1415(f)(2)(A); 34 CFR sec. 300.512(a)(3).

Bajo la *IDEA*, *supra*, cuando un menor con PEI vigente se traslada, la nueva agencia debe proveer inmediatamente una educación pública, gratuita y apropiada con servicios comparables, hasta que se adopte el PEI previo o desarrolle e implemente uno nuevo; esto aplica tanto a traslados intraestatales como interestatales, con la diferencia de que en traslados entre estados, la nueva agencia puede realizar una evaluación si lo estima necesario antes de desarrollar el nuevo PEI. 20 USC sec. 1414(d)(2)(C); 34 CFR sec. 300.323(e)–(f).

En Puerto Rico, el derecho a la educación tiene rango constitucional. *Orraca López v. ELA*, 192 DPR 31, 40-41 (2014); *Declet Ríos v. Depto. De Educación*, 177 DPR 765 (2009); C. E. Freytes González & G. Candal Segurola, <u>*El Derecho Constitucional a la Educación Especial*</u>, 2025, pág. 49. La Sección 5 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico reconoce el derecho de toda persona a una educación que propenda al pleno desarrollo de su personalidad y establece un sistema de instrucción pública gratuito y no sectario.

En armonía con lo anterior, se reconoció el derecho de las personas con discapacidades a recibir y reclamar judicialmente educación remedial. *Declet Ríos v. Depto. De Educación*, *supra*; *Bonilla v. Chardón*, 118 DPR 599 (1987). Eventualmente, la Asamblea Legislativa promulgó la Ley Núm. 21 del 22 de junio de 1977, mediante la cual se creó el PEE para proveerle servicios educativos especiales a los niños con discapacidades. 18 LPRA sec. 1331 *et seq.*; *Bonilla v. Chardón*, 118 DPR 599 (1987). Posteriormente, dicha ley se derogó por la *Ley de Servicios Educativos Integrales para Personas con Impedimentos*, Ley Núm. 51-1996, según enmendada, 18 LPRA sec.

1351 *et seq.*, la cual garantiza a las personas con discapacidades el derecho a recibir una educación pública, gratuita y apropiada, en el ambiente menos restrictivo posible, diseñada conforme a sus necesidades individuales para que puedan desarrollarse plenamente y convivir dignamente en su comunidad. *Íd.*, sec. 1352. Dicha ley designó al DEPR como la agencia responsable de proveer y coordinar los servicios educativos a estudiantes con discapacidades desde los tres (3) hasta los veintiún (21) años de edad.

El procedimiento adjudicativo para ventilar controversias bajo el PEE se rige por el Reglamento Núm. 9168 de 26 de febrero de 2020, que regula las querellas administrativas, las salvaguardas procesales y el trámite de vistas en Puerto Rico.

El DEPR adoptó el Manual de Procedimientos de Educación Especial (2020), el cual establece los protocolos internos para el registro, evaluación, determinación de elegibilidad, redacción del PEI y funcionamiento del COMPU. Aunque dicho Manual no crea, disminuye ni altera derecho alguno, rige la actuación administrativa de la agencia. En el inciso 2.3 (2) (c) del Manual de Procedimientos de Educación Especial, *supra*, se dispone que cuando un estudiante ubicado en una escuela privada necesite servicios de educación especial, se seguirá un procedimiento similar al establecido para los menores y jóvenes que asisten a las escuelas públicas.

El Manual dispone que todo estudiante con sospecha de impedimento debe ser evaluado mediante un proceso integral y multidisciplinario, que incluya una variedad de instrumentos y fuentes de información, sin que pueda utilizarse un solo criterio como base exclusiva para determinar elegibilidad. *Íd.*, secs. 3.1, 3.2 y 3.4. Asimismo, la determinación de elegibilidad requiere la concurrencia de tres elementos: (1) la existencia de una condición que cause una discapacidad; (2) que dicha condición limite negativamente su educación y desempeño educativo; y (3) que, por razón de ello, el

estudiante necesite educación especialmente diseñada. *Íd.*, sec. 4.2. Contrario a otras condiciones visibles, el diagnóstico de ADHD, que se complica por su alta comorbilidad, requiere completar un proceso completo y multidisciplinario basado en investigaciones científicas y la observación de la respuesta del menor por parte de un profesional cualificado. Freytes González & Candal Segurola, *op cit.*, pág. 156.

Finalmente, la sentencia por estipulación en el caso *Rosa Lydia Vélez v. Departamento de Educación, supra*, ha servido como marco estructural sobre el cumplimiento operacional del DEPR en materia de educación especial, particularmente en cuanto a términos procesales y provisión de servicios.

**III.**

En el presente caso, la señora López de Azúa planteó que el foro administrativo erró al concluir que su hijo no era elegible para el PEE. La recurrida adujo que la determinación recurrida descansó en una apreciación fragmentada de la prueba, centrada en las calificaciones académicas y que ignoró las conclusiones de las evaluaciones psicoeducativa, psicométrica y de habla-lenguaje, las cuales documentaron diagnósticos reconocidos que afectaban adversamente el aprendizaje y aprovechamiento escolar de su hijo, por lo que requería servicios educativos especialmente diseñados. Asimismo, planteó que el DEPR incumplió con su deber de garantizar continuidad y consideración adecuada del expediente proveniente del estado de Georgia, y que durante el trámite administrativo se vulneraron garantías procesales al admitirse prueba testifical no anunciada oportunamente. Examinada sosegadamente la totalidad del expediente, procede revocar la determinación recurrida.

En este caso, el foro administrativo reconoció que las evaluaciones realizadas en diciembre de 2024 acreditaron la existencia de condiciones que constituyeron una discapacidad bajo la normativa aplicable. En particular, la evaluación psicoeducativa

reflejó un trastorno específico del aprendizaje con dificultades significativas en lectura —velocidad, fluidez y comprensión—, identificación de letras y palabras y en expresión escrita —ortografía, gramática y puntuación—, concluyendo expresamente que tales dificultades afectaban adversamente el aprendizaje del menor al interferir con la asimilación de conceptos y la adquisición de destrezas académicas. Se indicó que la capacidad de recuperación del menor era condicionada, dado que podía aumentar su rendimiento académico y mejorar sus destrezas, al considerar las recomendaciones, intervenciones y acomodos razonables.

De igual forma, en la evaluación de habla y lenguaje del 11 de diciembre de 2024, se identificó un rezago leve en el lenguaje, caracterizado por dificultades en comprensión, análisis y lectoescritura, que afectaban adversamente el aprovechamiento escolar del menor y se recomendó intervención terapéutica por un período de tres (3) años. Igualmente, se indicó que la capacidad de recuperación del menor era condicionada con acomodos razonables y servicios terapéuticos adecuados. Por su parte, en la evaluación psicométrica del 17 de diciembre de 2024, se confirmó sintomatología significativa compatible con ADHD tipo combinado, asociada a dificultades conductuales que incidían en la capacidad de concentración, autocontrol y procesamiento de información del menor, interfiriendo con su desempeño académico, en el hogar y en sus relaciones sociales. En dicha evaluación, se indicó que el diagnóstico del menor afectaba adversamente su aprendizaje y aprovechamiento escolar, dado que sus dificultades en el área conductual afectaban su aprovechamiento, ejecución y adquisición de destrezas académicas, por lo que ameritaba servicios de intervención por un (1) año.

Estas conclusiones, emitidas por especialistas que evaluaron directamente al menor mediante instrumentos estandarizados y

juicio clínico profesional no se circunscribieron a la mera identificación de diagnósticos. Por el contrario, establecieron un vínculo explícito entre las condiciones detectadas y su impacto funcional en el entorno escolar. Asimismo, los informes incluyeron recomendaciones concretas y estructuradas de intervención —entre ellas, terapia individual de habla y lenguaje, apoyo psicoeducativo dirigido a las áreas de lectura y expresión escrita, e intervenciones para el manejo de la sintomatología asociada al ADHD— encaminadas a atender de forma las deficiencias identificadas.

La inclusión de tales recomendaciones no constituyó un elemento accesorio que debía ser descartado, sino una manifestación inequívoca del criterio profesional de que las dificultades observadas requerían tratamiento e intervención especializada para mitigar su efecto en el aprovechamiento y progreso escolar del menor. De este modo, la prueba pericial no solo acreditó la existencia de condiciones reconocidas, sino también la necesidad de servicios específicos orientados a remediar las áreas afectadas y fortalecer el desempeño académico del menor a fin de lograr su recuperación. La formulación de recomendaciones respondió precisamente a la identificación de necesidades que requerían servicios especializados para atender sus necesidades particulares, lo cual demostró que ameritaba una educación especialmente diseñada. No se trató de sugerencias abstractas, sino de directrices terapéuticas y educativas dirigidas a corregir, mitigar o compensar las deficiencias detectadas.

No obstante, pese a que el propio dictamen recurrido reseñó tales hallazgos, el foro administrativo determinó que dichas condiciones no limitaban negativamente el desempeño educativo del menor. Esa conclusión no se sostuvo a la luz de la evidencia y se apartó de las conclusiones especializadas consignadas en los informes periciales. La misma se apoyó esencialmente en que el menor obtuvo calificaciones promedio y en que uno de los profesores

entrevistados indicó que podía desarrollar conocimientos acordes con su grado y que mostraba interés en la clase. Tal razonamiento reveló que las calificaciones académicas tuvieron predominancia sobre la evidencia clínica y psicoeducativa documentada en el expediente, sin articular las razones por las cuales el juicio profesional de las especialistas debía ser descartado o minimizado.

El propio testigo del DEPR admitió que la determinación de no elegibilidad se fundamentó en gran medida en las calificaciones del menor. Tal admisión evidenció que el análisis contravino el claro mandato de evaluación integral que exigía considerar múltiples fuentes de información e impedía utilizar una sola medida como base exclusiva para determinar elegibilidad. Es norma reiterada, tanto en la jurisdicción federal como en la estatal, que el impacto adverso de la condición en el desempeño académico del menor no podía reducirse a un análisis de sus calificaciones, sino que también comprendía otras limitaciones que interferían con su progreso escolar conforme a las exigencias de su grado y edad.

En ese sentido, el hecho de que los progenitores hayan matriculado al menor en una institución académica de alto rendimiento no afectó la evidencia de sus necesidades con respecto a su aprovechamiento académico ni exime al DEPR de su responsabilidad de proveer los servicios que el menor ameritaba.

De otra parte, la profesora de ciencias que impartió clases al menor durante dos (2) años, declaró que éste presentaba dificultad en el análisis de preguntas y pensamiento crítico; que requería guía constante para ejecutar procesos cognitivos esperados en su grado; y que la calificación de B fue alcanzada con acomodos razonables. Esta declaración confirmó que el desempeño académico del menor dependía de apoyo y ajustes específicos. El hecho de que el menor obtuvo calificaciones promedio con acomodos no demostró ausencia de afectación adversa; por el contrario, evidenció que necesitaba

intervenciones para acceder al currículo en condiciones comparables a sus pares. La conclusión del foro, que descartó el testimonio por la falta de preparación especializada en educación especial, no eliminó el valor probatorio de las observaciones directas de la profesora sobre el funcionamiento académico cotidiano del estudiante.

En síntesis, el expediente evidenció que el menor presentó discapacidades reconocidas que afectaron adversamente su aprendizaje en áreas fundamentales y que requería intervenciones estructuradas más allá de acomodos generales para progresar académicamente conforme a sus capacidades. Ello, en armonía con uno de los propósitos esenciales de los servicios de educación especial: prepararlo adecuadamente para la educación postsecundaria, el empleo y una vida independiente. La determinación recurrida, al descansar esencialmente en las calificaciones académicas y minimizar conclusiones periciales que acreditaron que los diagnósticos del menor afectaron adversamente su desempeño educativo, resultó contraria a la evidencia del expediente y al marco normativo aplicable.

Por último, y en cuanto al componente de traslado, consta que el menor fue elegible y recibió servicios de educación especial en el estado de Georgia bajo la categoría de *Other Health Impaired.* Si bien cada jurisdicción puede aplicar sus propios procedimientos de determinación, ello no releva a la agencia receptora de asegurar continuidad razonable de servicios mientras se completaba el proceso evaluativo. El foro reconoció, además, que el DEPR incumplió con el término reglamentario para evaluar al menor tras su registro. Tal incumplimiento no podía operar en detrimento del estudiante.

**IV.**

Por los fundamentos que anteceden, se revoca la determinación recurrida. Se ordena al DEPR que tome las medidas necesarias a fin de garantizar al menor el disfrute de cualesquiera

beneficios le correspondan como elegible en el Programa de Educación Especial.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Hernández Sánchez disiente, sin opinión escrita.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones